## ABBOTT MORRIS *vs.* LEON RASST.

*Vendor's Lien—Express Reservation Necessary—Constructive
Trust—Non-Payment of Price.*

Under Acts 1910, ch. 216 (Code, art. 66, sec. 31), the vendor
of property, in order to have a lien for any unpaid part of
the purchase money, must expressly and specifically retain the
lien, and the amount thereof must appear on the face of the
deed by which the property is conveyed.                    p. 29

That the vendee of property, for which he agreed to pay in
part in Mexican currency, failed to do so, delivering merely
counterfeit currency in discharge of his obligation, *held* not to
justify the assertion of a constructive trust in the property in
his favor.                    p. 30

*Decided February 1st, 1924.*

Appeal from the Circuit Court of Baltimore City (CAR-
ROLL T. BOND, J.).

Bill by Abbott Morris against Leon Rasst. From a decree for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Richard B. Tippett,* with whom were *Richard B. Tippett & Sons* on the brief, for the appellant.

*J. Kemp Bartlett,* with whom was *Guion Miller* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant, at one time the owner of the leasehold interest in the property known as the Mount Vernon Brewery Company of Baltimore, sold it to The Baltimore Land Company, a corporation organized by him, and in part consideration therefor the said company executed unto him a mortgage thereon for the sum of $20,000. The company thereafter sold the property to one William J. Houston, who in settlement therefor gave to the company a mortgage thereon for $17,500, and the appellant was to release the mortgage held by him upon said property, but this, it appears, he did not do; that is, it was not released of record. Houston, after his purchase, paid to the company the sum of $5,000 on the mortgage given by him to it. To do this, however, he borrowed $5,000 from Mrs. C. H. Gordon, to whom he gave a mortgage on the property to secure the loan from her. Houston thereafter sold the property to one Richard S. Wolfe, who was told by the appellant that the said mortgage executed to him by The Baltimore Land Company, which it seems still stood unreleased upon record, would be released. Therefore the true indebtedness upon the leasehold interest in the property at that time consisted of $12,500, the balance unpaid on the mortgage to the land company, and $5,000 on the mortgage to Mrs. Gordon, making $17,500 in all. Wolfe thereafter sold his interest in the property to Alma C. Simenpietri. At this time the Safe Deposit & Trust Company, as trustee, was the owner of the

reversionary interest in said property, out of which issued an annual ground rent of $1,200, and, as there was at such time default in the payment of both ground rent and taxes, the Safe Deposit and Trust Company instituted an action of ejectment against Mrs. Simenpietri, the appellant, The Baltimore Land Company and Mrs. Gordon; and the trust company on the 15th day of July, 1915, was put in possession of the property under a writ of possession.

On the 2nd day of September, 1915, the appellant, Morris, entered into a written agreement with the appellee, Rasst, for the sale of said property. The purchaser thereunder was to receive a fee simple title, free and clear of all encumbrances, and was to pay therefor to the appellant the sum of $200,000 in Carrancistas Constitutional De Mexico currency, and to execute to the appellant a mortgage on said property for $20,000 in United States currency, and the settlement was to be made as soon as Morris was able to deliver legal title to the property.

At this time Morris was not the owner of the property, and just what his interest in it was, if any, is not shown by the record. Thereafter, on the 10th day of September of the same year, a second agreement for the sale of said property was entered into between Morris and Rasst, in substitution for the first one, made on September 2nd. By this agreement the price which was to be paid therefor was $32,935, payable as follows:

"Twelve thousand five hundred dollars to be represented by a mortgage * * * nineteen thousand four hundred and thirty-five dollars to be represented by the acceptance of $299,000.00 in Carrancistas Constitutional De Mexico Currency, without any obligation on the part of the purchaser to guarantee the value in United States currency of the said Mexican money, and the balance, to wit, one thousand dollars, to be paid in cash."

The payment of which was acknowledged therein, and the same, under the agreement, was to be repaid to the purchaser in the event the title was not satisfactory.

The agreement likewise contained the provisions that time was of the essence of the agreement, and that possession would be given on day of transfer, on or before October 10th, 1915. And it was further stated in the agreement that there were no encumbrances upon the property and that the vendor agreed "to obtain a proper waiver from the owners of the leasehold interest of their rights of redemption of the judgment in the ejectment proceedings recently entered against them." The rental, taxes, water rent and other charges were to be adjusted to the day of transfer, and the title was to be clear of all encumbrances and assessments and satisfactory to the Title Guarantee & Trust Company.

On the said 10th day of September, it was agreed by and between the Safe Deposit & Trust Company, trustee, and Morris, the appellant, that the company would sell to him all its rights, title and interest in the property, which at that time included the leasehold, as well as the reversionary interest therein, at and for the sum of $16,000, and in pursuance thereof a written agreement was executed by the parties, dated September 10th, though, as claimed, not executed until the 11th, by which the property was sold by said trust company to Morris at and for said sum of $16,000, of which, as shown by the contract, $1,000 was paid in cash, $2,500 was to be paid on the final ratification of the sale, and the balance, $12,500, was to be secured by a purchase money mortgage on said property, payable at the time, and to bear the rate of interest, therein named.

On the 11th day of September, 1915, the day on which it is said the contract of sale between Morris and the Safe Deposit & Trust Company was executed, Morris assigned his contract of sale made with said trust company to Rasst, by an assignment upon the contract, in these words:

"I hereby assign all of my right, title and interest in and to the within contract and the property therein described to Leon Rasst and do hereby request the vendor to report the sale to him instead of to me and credit on account of the purchase price the $1,000

which has been paid in accordance with the terms of
the contract."

And below this assignment appears the following accept-
ance by Rasst:

"I do hereby accept the above assignment and do
hereby covenant and agree to perform all of the cove-
nants, terms and conditions of the within contract."

On the 15th day of November, 1915, Rasst, having to
such time paid to the Safe Deposit & Trust Company, in
cash, the sum of $4,000, $500 in excess of the amount to
be paid at such time under the contract assigned to him, the
Safe Deposit & Trust Company conveyed said property to
Rasst, he executing to it a mortgage thereon for $12,000, to
secure the payment of the balance owing upon the purchase
money.

Rasst having paid to the Safe Deposit & Trust Company
the sum of $2,500, which, under the contract, the appellant
was to pay to it, as claimed by the appellant, it was agreed
between the appellant and the appellee that the $299,000
in Carrancistas Constitutional De Mexico currency should
be delivered to the Title Guarantee & Trust Company, to
be held by it, and not delivered to the appellant until he
had deposited with the said company the said sum of $2,500,
which had been paid by the appellee to the Safe Deposit &
Trust Company, and until compliance by the appellant with
the contract to pass to the appellee a fee simple unencum-
bered title to the property.

There was a delay, not only in the delivery of the Mexican
money to the Title Guarantee & Trust Company, but like-
wise a delay in the payment to it by the appellant of the
said sum of $2,500. This money, however, which was
claimed by the appellee to have been Carrancistas Constitu-
tional De Mexico currency, was finally deposited by him
with the Title Guarantee & Trust Company—$136,000 on
or about the 15th day of November, 1915, $132,000 on or
about the 10th day of January, 1916, and the last $34,000

on or about the 30th day of January, 1916, making in all more than $299,000.

The appellant, it seems, questioned the genuineness of the money, claiming it was counterfeit, and to substantiate the claim so made he had it examined by persons whom he claimed were experts, and these, or at least some of them, pronounced it, or some of it, counterfeit. He then withdrew from the possession of the Title Guarantee & Trust Company the said $2,500 that he had left with it to be delivered to the appellee upon the conditions hereinbefore stated; and upon the failure or refusal of the appellee to deliver to the Title Guarantee & Trust Company other Mexican currency of the character mentioned in the contract, the appellant, on the 12th day of January, 1916, had issued, out of the Superior Court of Baltimore City, an attachment against the appellee, which was disposed of, and the case was tried on the short note. In it it was stated that the suit was instituted to recover $299,000 said to be due and owing from the defendant to the plaintiff for the value of $299,000 (face value) "Carrancistas Constitutional De Mexico Currency" which was, as claimed by the plaintiff, guaranteed by the defendant to be genuine, but which, as stated therein, was spurious, false, and counterfeit; and the verdict being for the plaintiff for the sum of $12,500, an appeal was taken therefrom to this Court (*Rasst* v. *Morris,* 135 Md. 243), where the judgment was reversed, and a new trial awarded.

While this suit, on the law side, was pending in the court below, the bill in this case was filed on the 13th day of March, 1916. After the answer was filed thereto, the defendant by his petition, on the 31st day of March, 1916, asked that the plaintiff be required to elect whether he would prosecute the suit at law in the Superior Court or the proceedings in equity instituted in the Circuit Court of Baltimore City, in which said petition was filed.

The lower court refused to grant the request, and an appeal to this Court was taken from the order refusing to

do so (*Rasst* v. *Morris*, 133 Md. 187), which resulted in an affirmance of the order of the lower court.

Therefore, this is the third time that the parties hereto have been in this Court with questions growing out of actions and proceedings brought by the appellant to redress the alleged wrongs inflicted upon him by the appellee in connection with the sale of the property mentioned in these proceedings.

The bill in this case contains the facts mentioned above, as well as allegations of misrepresentations made to appellant by the appellee as to the whereabouts of the Mexican currency, when demand was made of him for its delivery to appellant, and it charges Rasst with knowing, or having reason to believe, that the currency was counterfeit and that his conduct in relation thereto was fraudulent.

The bill concludes with the following prayers:

"First—That this honorable court pass a decree declaring the balance of $19,435.00, with interest thereon, less $2,500 paid by the said Leon Rasst to the Safe Deposit and Trust Company, owing to your orator by the said Rasst a lien on said property and appoint a trustee to make sale of same to satisfy said lien.

"Second—That this honorable court pass a decree to the effect that the said Leon Rasst hold said property for the benefit of and in trust for your orator for the payment of the balance of purchase money due your orator of $19,435 and interest thereon due under the contract of purchase with the defendant of date September 10th, 1915, less $2,500.00 paid by said Leon Rasst to the Safe Deposit and Trust Company, trustee.

"Third—That this honorable court pass a decree giving unto your orator such other and further relief that this honorable court is competent to give and which he may be entitled to or which the nature of his cause may require."

The appellee contends that to declare the amount said by the appellant to be owing to him by the appellee, on the

alleged purchase money for the property mentioned, a lien upon the property sold, would be in contravention of the provisions of the Acts of 1910, ch. 216 (Code, art. 66, secs. 31-38).

That act, as declared by its preamble, was an act to add additional sections to article 66 of the Code, to be numbered 30, 31, 32, 33, 34, 35, 36, and 37,

> "abolishing the lien of vendors for unpaid purchase money, *unless the same be expressly and specifically retained* by the vendor, and providing for speedy enforcement thereof, when so retained, by sale of the property subject thereto." ·

And section 30 provides:

> "When any real or personal estate or property shall be hereafter transferred or conveyed and the purchase money, or any part thereof, shall remain unpaid at the time of the transfer or conveyance, the vendor shall not thereby have a lien or charge on the same for any other or different sums of money, than the sum or sums that shall appear to be due on the face of the deed or instrument conveying the same, and be therein, together with the time or times set for the payment thereof, specified and recited."

The above section when construed in the light of the preamble must be held to mean that in the sale of property as in this case, the vendor must expressly and specifically retain his lien for any unpaid part of the purchase money, and to do this, the amount thereof should appear upon the face of the deed by which the property is conveyed, otherwise his lien will be lost.

In the deed from the Safe Deposit & Trust Company to the appellee, by which the property was conveyed to the latter upon the order or direction of the appellant, the only unpaid part of the purchase money mentioned is the sum of twelve thousand five hundred dollars. This, as stated in the deed, was to be secured by the execution of a mortgage for said sum on the property conveyed, which was accord-

ingly done at the time of the execution of the deed. Not only is there no mention in the deed of any retention of a vendor's lien for any unpaid part of the purchase money, but there is no mention of such lien in the contract of sale between the appellant and appellee, or in the agreement of sale between the appellant and the Safe Deposit & Trust Company, which was thereafter assigned by the appellant to the appellee.

As the appellant did not expressly and specifically retain his lien for any part of the unpaid purchase money in accordance with the provisions of the statute, the appellee is, we think, right in his contention that the appellant is not entitled to a lien therefor upon the property conveyed.

It is, however, contended by the appellant that he is entitled to the relief prayed in the second prayer of the bill, in which the court is asked to pass a decree "to the effect that the said Leon Rasst holds said property for the benefit of and in trust for your orator *for the payment of the balance of the purchase money due your orator,"* etc. This relief is sought upon the theory that, because of the acts of the appellee and his failure to pay the balance of the purchase money, or to deliver to the appellant genuine Mexican currency to the amount named in the contract, which he promised to pay or deliver to the appellant, a constructive trust was thereby created, under which the appellee holds said property in trust for the appellant until said balance of purchase money is paid or delivered to him by the appellee.

If it be shown by the evidence in the case that the appellee did not, as claimed by the appellant, deliver to him genuine Mexican currency to the amount named in the contract of sale made by them, in payment of the balance of the purchase money for the property mentioned, such fact, we think, does not, when considered in connection with other facts and circumstances found in the record, warrant us in finding that a constructive trust was thereby created, by which the appellee holds the property in trust "for the payment of the unpaid purchase money."

Equity will at times, in cases of actual or constructive fraud committed in the acquisition of lands, impress a constructive trust upon it in favor of one equitably entitled thereto (26 *R. C. L.* 1222), but the acts and conduct of the appellee, complained of by the appellant in this case, do not, in our opinion, amount to fraud, either actual or constructive, that will justify the conclusion that a constructive trust was thereby created.

The alleged wrong committed by the appellee, of which the appellant complains, was his failure to pay the entire purchase money for said property, leaving still owing thereon to him that which was to be paid in Mexican currency; and what is really sought by the prayer under discussion, like that sought by the first prayer, is the collection of said unpaid part of the purchase money, by first impressing the land conveyed with a vendor's lien, and this we have said cannot be done consistently with the statute, in the absence of an express reservation or retention of the lien by the vendor. Therefore, as we find no error in the action of the court below in passing the decree appealed from, dismissing the bill, the decree will be affirmed.

*Decree affirmed, with costs.*