SUSANNAH MESSINGER *v.* FRANK A. ECKEN-RODE ET AL.

[No. 81, October Term, 1931.]

*Decided January 22nd, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, and SLOAN, JJ.

*A. Earl Shipley,* with whom was *Theodore F. Brown* on the brief, for the appellant.

*D. Eugene Walsh,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

On April 6th, 1923, William F. Eckenrode obtained a judgment by confession in the Circuit Court for Carroll County against William E. Heagy and Emma K. Heagy, his wife, and Edward Heagy and Edith Heagy, his wife, for $1,825.20, with interest, counsel fee, and costs. The principal was reduced on January 13th, 1928, to $1,200, and on August 25th, 1928, it was entered to the use of Frank A. Eckenrode and Alverda B. Eckenrode, his wife, the appellees.

On December 1st, 1927, Susannah Messinger obtained a judgment by confession in the same court against J. Edward Heagy and Mary Edith Heagy for $4,000, with interest, costs, and counsel fees. The consideration for Mrs. Messinger's judgment was the conveyance by her to J. Edward Heagy and Mary Edith Heagy of several parcels of land. The deed was dated November 30th, 1927, and it was recorded and the judgment entered simultaneously. The judgment represents the whole purchase money, no cash having been paid by the grantees.

Executions were issued on both judgments, and the property sold by the sheriff for $2,600, and, a dispute having arisen between the appellant and appellees as to the amounts they were entitled to receive out of the proceeds, the sheriff made alternative returns to the court under the provisions of section 16, article 87 of the Code, and the parties submitted their contentions to the court, which decided in favor of the appellees, that is, that their judgment be paid in full before any money was applicable to the Messinger judgment, and from an order to that effect this appeal is taken.

The contention of the appellees is that their judgment, having been entered first and being effective from its date, is entitled to priority, while the appellant contends that the only real property the Heagys had was that which she conveyed to them, and that her judgment gave her an equitable lien for the purchase money, and that she is therefore entitled to the entire proceeds of sale, and, if that does not appeal to the court, then, the property coming under the judgments at the same time, the proceeds should be distributed *pro rata* to the judgments of the appellant and the appellees.

The answer to the appellants' first contention is that a judgment, being a general and not a specific lien, is enforceable, not only against the property sold by the creditor to the debtor, but against any other property within the jurisdiction of the court wherein the judgment is entered. The fact that the appellant chose to take a judgment in payment of the purchase money does not give her security an effect different from that of a judgment to any other person. The statutes and decisions in this state show the vendor the ways and means whereby unpaid purchase money may be secured, and to act otherwise is to take the risk which negligence of one's rights involves. By Code, art. 66, sec. 4, it is provided that a purchase-money mortgage shall be superior to any previous judgment or decree for the payment of money. The same protection may also be afforded a third party who advances the purchase money in whole or in part. A vendor's lien

for unpaid purchase money may also be reserved under the provision of article 66, section 31. In *Ahern v. White,* 39 Md. 409, it was held that a vendor had a lien superior to a prior judgment, if the mortgage taken by him in payment of the purchase money were recorded simultaneously with the deed, and the opinion distinguished the decision from the case of *Rawlings v. Lowndes,* 34 Md. 639, when dower was held to attach because there was an interval of two weeks between the recording of the deed and mortgage, and the case of *Heuisler v. Nickum,* 38 Md. 270, where the lien of a judgment was held to attach because the mortgage was recorded three days after the deed. In the *Ahern* case the court was careful to distinguish the nature of a judgment and a lien reserved by a mortgage, and in commenting on the opinion in *Knell v. Green Street Bldg. Assn.,* 34 Md. 67, said: "The court in that case at some length considered the nature of a judgment and the rights it confers. It gives the judgment creditor no right to the land nor any estate in it, but simply a lien on it for payment of his debt; and such lien, being a general one, in no wise affects or impairs the vendor's lien for unpaid purchase money. He is neither in fact nor in law a *bona fide* purchaser, and must stand or fall by the real, and not by the apparent rights of the defendant in the judgment." (This decision antedated the Act of 1910, c. 216, Code, art. 66, sec. 31, by which a vendor shall have a vendor's lien only when reserved by the deed.) See *Caltrider v. Caples,* 160 Md. 392, 153 A. 445; *Lee v. Keech,* 151 Md. 34, 133 A. 835. The nature of the judgment such as the appellant contends she has is well defined by the Supreme Court of Virginia in *Kidwell v. Henderson,* 150 Va. 829, 143 S. E. 336, 340, wherein it is said: "A judgment constitutes a general lien upon all the debtor's real estate. The character of the cause of action does not affect the nature of the lien, and therefore a judgment for purchase money has no lien superior to that of a judgment for any other debt or liability." The appellant having failed to avail herself of the security which the law provided, she cannot now retrace her steps and cure the situation. *Neidig v. Whiteford,* 29 Md. 178; *Davis v.*

*Harlow,* 130 Md. 165, 100 A. 102; *Morris v. Rassl,* 145 Md. 22, 30, 31, 125 A. 499.

This then brings us to the other contention, and that is, whether the Eckenrode judgment, being first in point of time, has priority over the Messinger judgment, or, the land becoming subject to both judgments at the same time, should the proceeds of sale be apportioned between them.

"Judgments create liens only because the land is made liable by statute to be seized and sold on execution." *Dyson v. Simmons,* 48 Md. 207, 215. At common law a creditor had no remedy against the lands of his debtor, and it was not until the statute of Edw. I, c. 18, that a debtor's land could be subjected to an execution, and after that act the creditor could secure a writ of *elegit* to the sheriff to deliver to him the chattels of the debtor and one-half of his land. "In one or two states (Maryland and Virginia), the lien has been regarded as existent by force of this statute, or of a colonial statute giving a right to an execution." 3 *Tiffany on Real Property,* 2775; *Coombs v. Jordan,* 3 Bland, 284, 297. The authority in this state for the execution of a judgment against the lands of a debtor is derived from the fourteenth and fifteenth sections of the statute of 29 Car. 2, cap. 3 (statute of frauds). The fourteenth section provides for the entry of the judgment and the fifteenth "that such judgment as against purchasers *bona fide* for valuable consideration of lands, tenements or hereditaments to be charged thereby, shall in consideration of law, be judgments only from such time as they shall be so signed," etc. (*Coe's Alexander's British Statutes,* 692, 749, 750), and shall not "affect any lands or tenements as to purchasers or mortgagees," etc., unless "doggeted and entered" as provided by 4 and 5 W. & M., cap. 20, Docket (*Id.* 791), "and this judicial lien was afterwards mainly fortified and enlarged by a statute passed in the year 1732, 5 Geo. 2, c. 7 (*Id.* 964), applicable only to the then colonies of Great Britain, and received as law in Maryland, which subjected the whole of a debtor's real estate to be taken in execution and sold for the payment of his debts." *Jones v. Jones,* 1 Bland, 447. The lien extends not only to presently owned,

but to after-acquired, property (*Poe's Practice,* sec. 374; *Ahern v. White,* 39 Md. 409, 417), is effective from the date of its entry, and as amongst "several judgments against the same debtor they take effect according to their date and are entitled to be satisfied in the order of their seniority, without reference to the date of their execution, or the time at which it may be placed in the hands of the sheriff." *Poe's Practice,* sec. 378. "The lien relates to, and begins from the date of the judgment, and as between different execution creditors, the priorities are always fixed; not from the date when the executions of each, of right, might have issued, but from the date of the judgments respectively." *Robinson v. Consolidated Real Estate & Fire Ins. Co.,* 55 Md. 105, 110; *Dyson v. Simmons,* 48 Md. 207, 215. And in *Leonard v. Groome,* 47 Md. 499, 504, it was said: "The purchaser at a sale under process of execution upon a senior judgment holds the title above junior judgments and cannot be disturbed thereby. The holders of the junior judgments may resort in that forum (law) to any surplus after satisfaction of the execution."

The appellant has cited many decisions to the effect that, where there are several judgments against a debtor who acquired land after the entry of the judgments, they should, on execution, be distributed *pari passu,* and 2 *Freeman on Judgments* (5th Ed.), sec. 981, p. 2068, says: "This construction seems to be of undisputed correctness wherever the question has arisen except in Oregon, where the statute in terms says that a judgment shall apply to after acquired as well as presently owned property." The construction which the Oregon court puts on its statute is in line with the decisions of this court which have been cited, and that is, that judgments have relation to the date of their entry and are payable on execution accordingly. *Creighton v. Leeds,* 9 Or. 215.

This court has so often declared that judgments relate from the date of their entry that their respective priorities must be reckoned without reference to the date of acquisition of the land or leasehold to which they may attach. Code, art. 26, secs. 19-21. The judgment of the appellant, therefore, being second in order of its entry, is subordinated to it

in payment of execution, unless the difference in the Christian names of the judgment debtors has any effect.

It is conceded that the *Edward* Heagy and *Edith* Heagy in the Eckenrode judgment are the same defendants as *J. Edward* Heagy and *Mary Edith* Heagy in the Messinger judgment, and it is not disputed that both judgments may be enforced against the same two defendants, notwithstanding the difference in names, the identity being the material fact. *Hartman v. Thompson,* 104 Md. 389, 65 A. 117; *Bernstein v. Hobelman,* 70 Md. 29, 16 A. 374; *White v. McClellan,* 62 Md. 347; *First National Bank v. Jaggers,* 31 Md. 38. The appellant testified that before the conveyance by her to the Heagys she knew them as "Ed" and "Edith." The only provisions of the law as to entering, recording, and indexing judgments, prior to the Act of 1927, c. 647, amended by Act of 1929, c. 522, were sections 1 and 21 of article 17 of the Code, section 21, requiring the clerk of every circuit court to enter and transcribe in a well-bound book the docket entries of each civil suit and action immediately after each term, the transcript to contain the style or names of the parties, the nature of the case, the docket entries or memoranda appearing upon the docket; the books to be regularly paged and appropriately indexed with the names of plaintiffs and defendants. There is no suggestion that the suit docketed in Carroll County at the May term, 1923, with William F. Eckenrode as plaintiff and Edward Heagy and Edith Heagy as defendants, was not properly transcribed and indexed. No general index was required in Carroll County until the Act of 1927, c. 647. If any one had inspected the index in the clerk's office, he would have found the name "Heagy" and the Christian names by which they were known to the appellant and generally to the defendants' acquaintances. There is no evidence that a search of the judgment records was made by the appellant's then attorney (not the attorneys here appearing), and upon whose advice the confessed judgment was taken, to ascertain whether there were any judgments against the defendants, or that they were misled by the difference in the Christian names, but the appellant contends now that

70

there was, by reason of the difference, no constructive notice to them. The appellant having failed to use reasonable precautions to inform herself of the condition of the judgment records as to possible liens against the defendants, and in the belief that, if she had examined them, she would have found the Eckenrode judgment, we are of the opinion that the order of the circuit court should be affirmed.

*Order affirmed, with costs.*