**In re Alfred Rhineholt HOFFMAN, Jr. and Paula Anne Hoffman, Debtors.**

**Alfred Rhineholt HOFFMAN, Jr. and Paula Anne Hoffman, Plaintiffs,**

**v.**

**INTERNAL REVENUE SERVICE, et al., Defendants.**

**In re Barbara Jean HAIRSTON, Debtor.**

**Barbara Jean HAIRSTON, Plaintiff,**

**v.**

**MITCHELL FUR COMPANY, et al., Defendants.**

**Bankruptcy Nos. 80–2–0816–L, 81–2–0022–L.**

**Adv. Nos. 81–0029, 81–0201.**

United States Bankruptcy Court, D. Maryland.

March 18, 1983.

Mitchell Stevan, Baltimore, Md., for plaintiffs Alfred Rhineholt Hoffman, Jr. and Paula Anne Hoffman.

Mark Davis, Baltimore, Md., for plaintiff Barbara Jean Hairston.

Charles Zuravin, Baltimore, Md., for defendant Internal Revenue Service.

Joel I. Sher, Baltimore, Md., for defendant York Corrugating Co.

Robert C. Prem, Baltimore, Md., John W. Stitt, York, Pa., for defendant Schumacher & Seiler, Inc.

David C. Brown, Annapolis, Md., for defendant Comptroller of the Treasury of the State of Md.

Lawrence D. Coppel, Baltimore, Md., for the Trustee in Bankruptcy in Hairston.

Gary R. Greenblatt, Baltimore, Md., for the Trustee in Bankruptcy in Hoffman.

## MEMORANDUM OPINION AND ORDER

JAMES F. SCHNEIDER, Bankruptcy Judge.

### THE HOFFMAN CASE

The adversary proceeding in the Hoffman case was instituted by the debtors' complaint filed on January 21, 1981, seeking avoidance of certain judicial liens pursuant to 11 U.S.C. § 522(f)(1) (Supp. V 1981). The defendants Internal Revenue Service ["I.R.S."], Schumacher & Seiler, Inc. ["Schumacher"], and York Corrugating Company ["York"], filed answers, and the matter was set down for hearing with other cases presenting similar legal issues concerning § 522(f). Following a hearing before the Honorable Harvey M. Lebowitz, which was held on March 12, 1981, a decision in all the related cases was held *sub curia*. Judge Lebowitz' opinion in the case of *In re Coleman*, 10 B.R. 772, 773 n. 2 (Bkrtcy.D.Md.1981), which was filed on April 29, 1981, disposed of all pending matters save the instant controversies, which remained undecided when he resigned on January 31, 1982. Counsel thereafter consented to a decision upon the record and the transcript of the hearing.

The parties stipulated to the following facts. Pursuant to an Order of this Court dated October 1, 1980, Riverside Federal Savings and Loan Association ["Riverside"], the mortgagee of the Hoffmans' residence at 3126 Hernwood Road, Woodstock, Maryland, was permitted to proceed with a foreclosure action pending in the Circuit Court for Baltimore County. Following a sale of the property, Riverside turned over to the Bankruptcy Trustee the surplus shown in the Auditor's Amended Report and Account in the amount of $71,093.44. Four creditors claimed an interest in the fund: (1) the I.R.S. under a lien recorded March 15, 1979 in the amount of $15,844.99; (2) Schumacher under a judicial lien dated July 10, 1979 in the amount of $64,947.78; (3) York under a judicial lien dated September 4, 1979 in the amount of $21,448.67; and (4) the Comptroller of the Treasury for the State of Maryland (the "Maryland Comptroller") under a lien recorded December 20, 1979 in the amount of $3,756.82.

The first three liens sought to be avoided were created during the so-called "gap period"—the interval between the November 6, 1978 enactment date and the October 1, 1979 effective date of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2683 (1978) (codified in part at 11 U.S.C. §§ 101–1330 (Supp. V 1981)). The Maryland Comptroller's lien arose after the effective date of the Reform Act. He has filed a belated answer consenting to the avoidance of his lien.

## THE HAIRSTON CASE

The Hairston case was heard by Judge Lebowitz on July 14, 1981 upon the debtor's amended complaint to avoid a judicial lien. A motion for judgment by default was filed by the debtor upon the failure of the defendants to answer or otherwise defend. As in Hoffman, the resignation of Judge Lebowitz, occurred while a decision on the merits was pending.

Barbara Jean Hairston filed a voluntary Chapter 7 petition in this Court on January 5, 1981. She claimed as exempt her residence at 2009 Greenmount Avenue, Balti-

more, Maryland, pursuant to the federal homestead exemption provided by 11 U.S.C. § 522(d)(1) which permits an exemption not to exceed $7,500. She has assigned to her home a value of $6,530 as indicated on her Amended Schedule B–4 which she filed on May 20, 1981. Her residential real property is unencumbered except for a judicial lien in the amount of $1,722 which was obtained by the Defendant Mitchell Fur Company ("Mitchell") on May 19, 1977, prior to the enactment date of the Reform Act on November 6, 1978. She filed this complaint to avoid the lien on February 23, 1981.

## ISSUES

1. What is the effect of 11 U.S.C. § 522(f)(1) upon the judicial lien in *Hairston* which was perfected prior to the enactment of the Bankruptcy Code on November 6, 1978, and upon the judicial liens in *Hoffman* which were perfected during the period between the enactment of the Bankruptcy Code on November 6, 1978 and the date the Code became effective on October 1, 1979?

2. Do the various liens which encumber the debtors' properties impair exemptions which the debtors are entitled to claim?

3. Assuming that the liens are determined to impair exemptions, will the liens be avoided on a *pro rata* basis or in the inverse order of their priority?

4. What is the proper disposition to be made of the interest which has accrued during the pendency of these proceedings upon the proceeds of sale which were escrowed in *Hoffman*?

## 1. RETROACTIVE APPLICATION OF SECTION 522(f)(1)

In this district, 11 U.S.C. § 522(f)(2) has been held to be constitutional when it is applied to avoid nonpossessory, nonpurchase-money security interests in household goods and furnishings during the "gap period". *In re Coleman, supra.* In that opinion, Judge Lebowitz recognized the continuing viability of *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854,

79 L.Ed. 1593 (1935) in declaring as violative of the Due Process Clause of the Fifth Amendment the retroactive application of § 522(f)(2) to destroy consensual liens created prior to the enactment date of the Code on November 6, 1978.

In the recent case of *United States v. Security Industrial Bank,* 459 U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d 235, 9 B.C.D. 1071 (1982), the Supreme Court of the United States agreed with Judge Lebowitz that pre-enactment consensual liens could not be avoided by the Code, albeit employing a somewhat different rationale for its conclusion. Without reaching the constitutional issue, the Court held that where the retroactive application of a bankruptcy statute raises substantial constitutional questions, it will not be so applied to destroy preexisting property rights, in the absence of a clear statement of congressional intent. Finding no such statement of intent that § 522(f)(2) be applied to avoid nonpossessory, nonpurchase-money security interests existing before the enactment date of the Code, the Court denied retroactive effect to the subsection.

In light of this ruling, two weeks later, the Court vacated the decision of the Third Circuit Court of Appeals in the case of *In re Ashe,* 669 F.2d 105 (3 Cir.1982), which had held constitutional the application of § 522(f)(1) to avoid preenactment judicial liens. *Commonwealth National Bank v. Ashe,* 459 U.S. ——, 103 S.Ct. 563, 74 L.Ed.2d 235 (1982). The implication of the Court in *Ashe* and its unequivocal holding in *Security Industrial Bank* leads this Court to conclude that § 522(f)(1) may not be retroactively applied to destroy the preenactment judicial lien in *Hairston.*

In several cases, the Maryland Court of Appeals has discussed the nature of the interests acquired by judgment creditors in debtor's property in this state. In *Lee v. Keech,* 151 Md. 34, 133 A. 835, 46 A.L.R. 1488 (1926), the Court characterized the interest as one "rather in the nature of a remedy, than of an estate," deciding that one who holds a judgment against an heir does not possess a sufficient interest in the debtor's real property to attack the will by which it was devised to him. The opinion contains dicta to the effect that because the right to a judgment lien is conferred by statute in Maryland, "it may be changed by statute without violating any constitutional inhibition." *Id.* 151 Md. at 38, 133 A. at 836. In *Union Trust Co. v. Biggs,* 153 Md. 50, 137 A. 509 (1927), it was held that because a judgment creates only a general, non-specific lien, a judgment lien creditor is not a *bona fide* purchaser for value, and must stand behind a holder of a prior, specific lien. In *Messinger v. Eckenrode,* 162 Md. 63, 67–68, 158 A. 357, 358 the Court stated that a judgment lien:

> . . . [E]xtends not only to presently owned, but to after-acquired property (*Poe's Practice,* sec. 374; *Ahern v. White,* 39 Md. 409, 417), is effective from the date of its entry, and as amongst "several judgments against the same debtor they take effect according to their date and are entitled to be satisfied in the order of their seniority, without reference to the date of their execution, or the time at which it may be placed in the hands of the sheriff." *Poe's Practice,* sec. 378.

And in the most recent case touching upon the subject of judicial liens, namely *Liquor Dealers v. Comptroller,* 241 Md. 656, 661, 217 A.2d 571, 574 (1966), the Court stated:

> Since a lien predicated upon the rendition or entry of a judgment did not exist at common law, a judgment is not, in and of itself, a lien on either real or personal property. The right a judgment creditor has to a lien is therefore wholly statutory. *Caltrider v. Caples,* 160 Md. 392, 394, 153 Atl. 445 (1931). Furthermore, a judgment creates a lien on real property (and certain leasehold estates) only because the land is made liable, formerly by statute but now by rule, to be seized and sold on execution. *Messinger v. Eckenrode,* 162 Md. 63, 158 Atl. 357 (1932). By the same token, an execution is a lien on personal property only because the property can be sold in satisfaction of the execution. *Jordan v. Reynolds,* 105 Md. 288, 66 Atl. 37 (1907). And it was said in

*Lee v. Keech,* 151 Md. 34, 133 Atl. 835 (1926), that the statutory lien of a judgment creditor is in the nature of a remedy rather than of an estate and as such is subject to legislative control and may be changed by statute without violating any constitutional inhibition . . .

■ Despite some of the language in the cited cases which denigrates the quality of judicial liens, this Court is constrained to hold that the interests acquired by judgment creditors in debtors' real property, whether characterized as rights or mere remedies, are substantial. And where the retroactive application of the Bankruptcy Code to these interests raises serious constitutional questions, such application fails to comport with the test enunciated in *Security Industrial Bank, supra,* and cannot be permitted to destroy preenactment property rights. This Court does not read the dicta in *Lee v. Keech, supra,* to indicate that the preexisting right of a judgment creditor to a lien may be withdrawn by either the state or national legislature, but that such prospective legislation as will limit or destroy the right to obtain liens in the future is permissible. For these reasons, the preenactment judgment lien in Hairston may not be avoided by 11 U.S.C. § 522(f)(1).

■ On the other hand, the gap liens in *Hoffman* which arose post-enactment are constitutionally avoidable. The avoidance of judgment liens created between the date of the Code's enactment and its effective date does not raise the difficult and sensitive constitutional issues enunciated by the Supreme Court in *Security Industrial Bank, supra.* This is so because gap period liens may be distinguished from preenactment liens on the basis that parties who became judgment creditors after the enactment of the Code were on notice of its terms, for purposes of due process, when they acquired their interests in the debtors' property. Based upon this analysis, this Court holds that the judgment liens in *Hoffman* are subject to avoidance by the retroactive application of 11 U.S.C. § 522(f)(1).

## 2. IMPAIRMENT OF EXEMPTIONS

■ The decision of the Court (Lebowitz and Goldburn, JJ.) in the case of *In re Ford,*

3 B.R. 559 (Bkrtcy.D.Md.1980) aff'd *sub nom. Greenblatt v. Ford,* 638 F.2d 14 (4th Cir.1981) held that a debtor may avoid a security interest even though the value of the secured debt exceeds the market value of the property, and that a debtor may claim an exemption in property despite his lack of equity in it. In the instant case, this leads to the conclusion that the debtors in *Hoffman* are entitled to claim an exemption in the funds which resulted from the sale of their residence and to avoid liens which have attached to the fund to the extent that such liens impair their right to an exemption. *See In re Losieniecki,* 17 B.R. 136 (Bkrtcy.W.D.Pa.1981).

In *Hoffman,* the debtors have claimed an exemption of $15,800 pursuant to the federal exemptions set forth in 11 U.S.C. § 522(d)(1) and (d)(5) out of the net proceeds from the sale of their residence totalling $71,093.44. Because interest has accrued on the proceeds during the pendency of this case, the fund is now in excess of $82,000. Judgments against the debtors total $105,998.26, exceeding the fund by almost $24,000. To the extent that the judgments of the State Comptroller and of York against the debtors exceed the fund, they are unsecured and are therefore not liens. 11 U.S.C. § 506. In any event, the Comptroller has consented to the avoidance of his tax lien in the amount of $3,756.82. The judgment of York in the amount of $21,448.67 is completely unsecured, and that of Schumacher totalling $64,947.78 is only partially secured in funds subject to its lien after deducting the prior I.R.S. lien in the amount of $15,844.99 and interest on the tax lien imposed by 11 U.S.C. § 506 and 26 U.S.C. §§ 6601, 6621 (Supp. V 1981). To the extent that judgments are unsecured, they are subject to being discharged. 11 U.S.C. § 524(a). Because only the lien of Schumacher impairs the debtors' exemption, it is the only lien subject to being avoided pursuant to § 522(f)(1), and then only to the extent of $15,800, the amount of the exemption which it is found to impair. This results in the retention by Schumacher of a lien in the approximate amount of $45,000.

The tax lien of the I.R.S. survives in its entirety because it does not impair the exemption. The issue of whether a tax lien is strictly a statutory lien and therefore not subject to avoidance by the debtors is moot.*

### 3. AVOIDANCE OF LIENS ON BASIS OF LACK OF PRIORITY

■ The foregoing analysis presupposes the avoidance of liens in the descending order of their priority, and for good reason. This Court has found no authority, nor have the parties cited any, for the proposition that liens are to be avoided in any other fashion. Section 724(b) of the Bankruptcy Code supports the proposition by implication and both state and federal courts in Maryland have recognized the superiority of liens prior in time over later ones.

In the case of *Aetna Cas. & Sur. Co. v. Sherwood Distilling Co.*, 271 F.Supp. 381 (D.Md.1967), the United States District Court for the District of Maryland held:

> The principle "first in time is first in right" is the cardinal rule in determining lien priorities. As Chief Justice Marshall states in *Rankin v. Scott*, 12 Wheat. 177, 179, 6 L.Ed. 592 (1827): 'The principle is believed to be universal that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds.'

*Id.* at 388. In the case of *Balance Ltd., Inc. v. Short*, 35 Md.App. 10, 368 A.2d 1116 (1977), the Maryland Court of Special Appeals held that surplus funds remaining after the payment of expenses in a foreclosure sale and the satisfaction of a first lien are distributable to other lienholders in the order of their priority, and any residue thereafter to the owners of the land, citing Maryland Rule of Procedure W 75(a) and *McCann v. McGinnis*, 257 Md. 499, 512, 263 A.2d 536, 542 (1970).

Section 724(b) of the Code requires that the proceeds of certain property subject to tax liens be distributed according to the seniority of various liens with certain modifications. The scheme of distribution would be meaningless if lien avoidance was not in the descending order of the liens' priority.

This leads to the conclusion, which this Court has drawn, that the liens in *Hoffman* are to be avoided in the descending order of their priorities.

### 4. DISPOSITION OF INTEREST

■ With respect to the distribution of interest earned on the proceeds of sale since they were escrowed, the Trustee in *Hoffman* contends that the controlling provision of the Code is 11 U.S.C. § 506(b), which provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

The Court agrees that the I.R.S. is entitled to be allowed interest in this case at rates fixed pursuant to 26 U.S.C. § 6621. *In re Busman*, 5 B.R. 332 (Bkrtcy.E.D.N.Y. 1980).

The I.R.S. is allowed interest under section 506(b) even though all or a portion of its claim for principal and interest may be subordinated to certain priority claims specified in sections 507(a)(1)–(a)(5) pursuant to section 724(b).

Any remaining interest on the proceeds of sale are to be paid to Schumacher, not on the basis of section 506(b), but because the principle fund will be exhausted without fully satisfying Schumacher's claim. (Less than half of the interest which has accumulated on the proceeds of the sale will be required to pay interest on the I.R.S. lien at section 6621 rates.) Based on the priority of its claim, Schumacher is entitled to be paid the remaining interest on the proceeds of the sale as if that interest were principle. This is the converse of the condition set forth in § 506(b), because here the claim is secured by property valued at less than the

---

* 11 U.S.C. § 101(27) defines a "judicial lien" to mean a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." A tax lien is obtained by filing a notice of lien without resort to the judicial process.

amount of Schumacher's claim. The interest to be paid is not the interest on the judgment, but the interest on the fund. No interest on Schumacher's claim may be paid. Rather, it is the interest on the fund which will be paid to Schumacher against its claim for $64,947.78, *without interest.* This is so because where the collateral has appreciated in value, the claim of a priority judgment creditor is secured to the extent of the increase.

The debtors have cited no authority for the proposition that they are entitled to be paid their exemptions totalling $15,800 *plus interest.* The Court is aware of no such authority. The Code sets absolute dollar limits on the homestead exemption in 11 U.S.C. § 522(d)(1), and the so-called "cafeteria" or "wild card" exemption in 11 U.S.C. § 522(d)(5). Accordingly, the debtors will be paid out of the fund the total sum of $15,800, *without interest.*

For all of the foregoing reasons, it is this 18th day of March, 1983

ORDERED that the complaint filed by the debtor, Barbara Hairston, against the Mitchell Fur Company, for the avoidance of a preenactment judicial lien in Adversary No. 81–0201, be and the same is hereby DISMISSED; and it is further

ORDERED that the complaint filed by the debtors, Alfred Rhineholt Hoffman, Jr. and Paula Anne Hoffman, against the Internal Revenue Service, Schumacher & Seiler, Inc., York Corrugating Co., and the Maryland Comptroller, in Adversary No. 81–0029 for the avoidance of judicial liens created subsequent to the date of enactment of the Bankruptcy Reform Act and prior to its effective date, be and the same is hereby GRANTED; and it is further

ORDERED that the judicial lien of Schumacher & Seiler, Inc., be and the same is hereby avoided pursuant to 11 U.S.C. § 522(f)(1) to the extent necessary to permit the debtors to claim the federal exemptions set forth in 11 U.S.C. § 522(d)(1) and (d)(5) totalling $15,800; and it is further

ORDERED that the Debtors be paid the sum of $15,800 from the proceeds of sale representing their federal exemptions; and it is further

ORDERED that the Internal Revenue Service is allowed a secured claim in the amount of $15,844.99 with interest from the date when the lien was recorded at the rates set by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621 and the lien shall not be avoided pursuant to 11 U.S.C. § 522(f)(1) because it is found not to impair the said exemptions claimed by the debtors; and it is further

ORDERED that the Trustee hold a portion of the principal and interest on the escrowed funds equal to the I.R.S.'s allowed secured claim for future disposition by order of this Court pursuant to section 724(b); and it is further

ORDERED that remaining principal and interest on the escrowed fund after allowance of the I.R.S. lien with interest and the Debtors' federal exemptions be paid to Schumacher & Seiler, Inc., against its claim for $64,947.78, without interest; and it is further

ORDERED that the judgments of York Corrugating Co. and the Maryland Comptroller are found to be unsecured claims pursuant to 11 U.S.C. § 506, and are therefore subject to the discharge granted to the Hoffmans; and it is further