In re Larry BATES and Barbara Bates,
Debtors in Chapter 11.

Bankruptcy No. 82–11028.

United States Bankruptcy Court,
W.D. Tennessee, E.D.

March 25, 1986.

William H. Brown, for debtors.

Clinton V. Butler, Jr., for Reelfoot Bank.

## MEMORANDUM OPINION AND ORDER re: OBJECTION OF REELFOOT BANK TO DEBTOR'S PLAN

WILLIAM B. LEFFLER, Bankruptcy Judge.

This cause is before the Court on the objection of Reelfoot Bank (Bank) to the Debtors' Chapter 11 plan which proposes to pay debts owed the Bank at a contractual interest rate of seven percent (7%) per annum. At issue is whether this Court may modify the prepetition contractual rate of interest.

The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The record reflects that the Debtors obtained two separate loans from the bank in exchange for first and second mortgages on their home. The first loan in the amount of $95,000.00 was obtained in June,

1974, and is evidenced by a promissory note and deed of trust. The second loan, in the amount of $20,000.00, was obtained in June, 1977, and is also evidenced by a note and deed of trust. Both notes contain a seven percent (7%) annual interest rate. The terms of the notes provide that they are "due on demand" but are renewable annually upon "payment of interest and 5% principal." They were executed by Mr. Bates when he was the president and owner of the Bank and were approved by the then presiding board of directors. Mr. Bates sold the Bank to its present owners in 1980.

The required payment on the $95,000.00 (first) note was due annually on June 10. Mr. Bates failed to make such by June 10, 1982. He tendered payment on June 16, 1982 with what the Bank determined to be an insufficiently funded check. The Bank notified him that he was in default and initiated foreclosure proceedings.

On September 10, 1982, the Bates' filed a Chapter 11 Petition with this Court after attempts to enjoin the foreclosure in state court failed. The parties agree that the amount due on September 10, 1982 was $91,894.87 and that the property more than secures this amount.

It is the Bank's position that Mr. Bates was in default as to the first note on June 10, 1982. Consequently, according to the Bank, the balance owed became due at that time and without receipt of such, it became entitled to reestablish any repayment terms. Moreover, the Bank contends that both notes are voidable as they violate Regulation O of the Board of Governors of the Federal Reserve System. Regulation O essentially prohibits loans by banks to executives, shareholders, or employees with terms that are not comparable to loans made to bank customers. It became effective in 1979. See 12 C.F.R. § 215.4. However, according to the Bank's President, Mr. Fowler, no sanctions have been imposed on the Bank pursuant to this regulation. The Bates deny that they effectively defaulted on the first note because the customary practice by the Bank regarding such payments was allowance of a thirty day grace period beyond the due date for making payment. In addition, they contend that even if in default, they should not be required to pay higher interest rates because the default provisions of the note itself do not require such.

With respect to Regulation O, the Bates contend that it should not be considered here because it was not in effect at the time the loans were made. Moreover, the regulation makes no provision for enforcement of its terms by entities other than the Comptroller of the Currency who may impose civil penalties. Such has not been done here regarding the Bates' loans.

■ It is well settled that "post-bankruptcy interest is not allowed in ordinary bankruptcies and reorganizations." *In re Caudle*, 13 B.R. 29, 32 (Bankr.W.D.Tenn. 1981). See also, e.g., *Matter of Spencer*, 45 B.R. 1 (Bankr.W.D.Mo.1983), *In re Smith*, 42 B.R. 198 (Bankr.N.D.Ga.1984). An exception to this general rule is where, as here, a claim is fully secured by collateral which is valued above the amount of the claim. See 11 U.S.C. § 506(b) and e.g., *In re Caudle*, supra, *In re Venable*, 48 B.R. 853 (S.D.N.Y.1985), *In re Morrissey*, 37 B.R. 571 (Bankr.E.D.Va.1984). According to the statute, and the majority of courts interpreting it, the amount of the allowed interest is that "provided under the agreement under which such claim arose." 11 U.S.C. § 506(b). See also *Matter of Johnston*, 44 B.R. 667 (Bankr.Mo.1984), *In re Loveridge Machine and Tool Co., Inc.*, 36 B.R. 159 (Bankr.D.Utah 1983). In fact, according to *Collier on Bankruptcy*, only two courts addressing the issue have allowed the use of non-contractual interest rates where a contract existed. "In each of these cases, the bankruptcy judges improperly attempted to apply section 506(b) to determine the appropriate interest rate to be paid on secured indebtedness under a Chapter 13 plan." 3 *Collier on Bankruptcy* (15th ed.) ¶ 506.05.

In light of these findings, then, this Court would ordinarily be compelled to apply the contractual interest rate without

further discussion. However, in this instance, there are the questions regarding what effect banking regulations and the debtors' alleged default may have on the contract's terms.

Turning first to Regulation O of the Board of Governors of the Federal Reserve System (12 C.F.R. Part 215), the Court finds at § 215.4 the prohibition against the granting of loans by banks to their executives on terms more favorable than those granted bank customers. Violation of this section may invoke imposition of up to a $1,000.00 a day civil penalty against the violating bank pursuant to 12 U.S.C. § 504. 12 C.F.R. § 215.11. Section 504 of Title 12 of the U.S. Code provides that imposition of such a penalty is to be carried out by the Comptroller of the Currency when a national bank is involved or by the Board when a state bank is involved. Upon assessment of such a penalty, the Bank may have an agency hearing and may appeal the agency decision to the U.S. Court of Appeals in its district. Once a final assessment order is entered, the violating bank is subject to suit in U.S. District Court for failure to pay the assessed amount.

■ From the above, it is apparent that enforcement of Regulation O is a task delegated to the Comptroller of the Currency and the Federal Reserve Board. It is the Court's understanding that in this case there have been no penalties assessed against the Bank due to Mr. Bates' loans. Therefore, in light of the exclusive sanctions provided for violation of this regulation and the failure of the authorized agencies to impose such, it appears that the interest rates here do not warrant alteration on these grounds by this Court.

■ Given this conclusion, coupled with that regarding the allowance of post-bankruptcy interest pursuant to 11 U.S.C. § 506(b), it is this Court's determination that the amount still due on the $20,000.00 note (second) is to be repaid at the contractual, 7%, interest rate.

Turning finally to the first note and, assuming arguendo, that the Bates did default on the note, the Court must determine whether the result of such is avoidance of the note and its interest rates. As discussed above, the note is a demand note, renewable annually upon payment of interest and 5% principal each year. The makers are obligated to pay the sum of $95,000.00 with seven percent interest per annum from maturity until paid in full. Upon default, the balance owed becomes immediately due and the Bank is given the option to foreclose. In addition, the deed of trust securing the note provides that, upon default in the paying of any installment which results in the whole debt becoming due and payable, "interest shall accrue on past due principal and past due interest at the rate of 6% per annum from date of maturity to date of payment."

From this language, it is apparent that default by the maker of the note entitled the Bank to satisfaction of the debt or foreclosure on its collateral. Therefore, absent the bankruptcy petition or cooperation from the Bank, it appears that the Bates would have been unable to repay the debt according to the note's terms subsequent to any default.

■ However, the purpose of the Bankruptcy Code is to provide debtors with an opportunity for a fresh start with respect to their financial obligations. This purpose is reflected at 11 U.S.C. § 1124(2) which allows a Chapter 11 debtor to cure a pre or post petition default and reinstate the maturity of the claim as it existed before any default notwithstanding any contractual provision or applicable law that entitles the holder of the claim to receive accelerated payment. Although, under this same section, the debtor must provide for payment of any damages suffered by the claimant due to his reasonable reliance on the contractual right to accelerate the claim, if the claimant's contractual rights are otherwise unaltered, the debtor's plan may provide for payment of the debt pursuant thereto. See 5 *Collier on Bankruptcy* (15th ed.) ¶ 1124.03(2) and *In re Masnorth Corp.* 28 B.R. 892 (Bankr.N.D.Ga.1983).

Given the above statutory provision, the Court concludes that even if the Bates did default on the first note, they would be entitled to the opportunity to cure such and reinstate the original contract's terms.

Therefore, it is HEREBY ORDERED that the Bank's objection to the Debtor's Chapter 11 plan which proposes to repay debts owed the Bank at the contractual interest rate is overruled.