**In re Wayne LAYMON, Debtor.**

**Bankruptcy No. 87–11503–A11.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

June 27, 1990.

Adrian M. Overstreet, Austin, Tex., for James Crozier, trustee.

Conde Thompson Cox, Austin, Tex., for Theron Bradford, trustee.

## DECISION ON MOTION TO RECONSIDER

LEIF M. CLARK, Bankruptcy Judge.

This decision addresses the appropriate rate of interest to award to an oversecured creditor under Section 506(b) of the Bankruptcy Code. The creditor wants the court to look to the contract and apply the applicable rate based on that agreement. The creditor adds that, because the debtor was in default when the bankruptcy was filed, the applicable rate is the 18% default rate of interest. The trustee retorts that, after the U.S. Supreme Court's decision in *Ron Pair*,[1] the contract is irrelevant to this question, so the court should look elsewhere for the appropriate rate. The trustee suggests the federal judgment interest rate.

### Background

On August 18, 1983, Wayne Laymon ("Laymon") executed a promissory note for $669,900.00 in favor of Theron Bradford, Trustee ("Bradford"), secured by a Deed of Trust on some real property. The note called for annual payments for four years with a balloon payment due at the end of the fifth year on August 24, 1988. Contract interest of 10% accrues on unpaid principal. The note also provides for interest on matured, unpaid amounts at the highest rate permitted by law—which is 18% in this case.

Laymon filed bankruptcy on September 4, 1984 without having made the first payment on the note, which had come due a few weeks before. The debtor made two "adequate protection" payments to Bradford. James Crozier ("Crozier") was subsequently appointed Chapter 11 Trustee in the case in March 1987. He also made adequate protection payments to Bradford on behalf of the estate.

In May 1989, Bradford filed a motion requesting payment of interest, costs, and fees under 11 U.S.C. § 506(b). He asserted that he was entitled to interest at the 18% penalty interest rate. After a hearing on the motion, the court entered an order denying the request for penalty interest, but found that Bradford did have an allowed secured claim of $375,525.00, plus pre- and post-petition interest of $60,046.00 through May 15, 1989. The court held that interest continued to accrue at the contract rate (10%).

Bradford filed a motion to reconsider this order. Bradford claims that (i) Bradford is entitled to recover a "default rate of interest" under the Note, and that (ii) the adequate protection payments made to Bradford during the pendency of this case should be applied to reduce interest instead of principal (in part because of the parties' stipulation that the claim of Bradford is oversecured).[2] Crozier filed a Cross Motion to Reconsider, asserting that interest should be calculated at the legal judgment rate, not the contract or default rate, and that interest upon interest should not be allowed.

### Discussion

Under the Bankruptcy Code, interest effectively ceases to accrue on a debtor's obligations as of the filing of a petition because any claim for unmatured interest beyond the filing date is disallowed as a claim against the estate. *See* 11 U.S.C. § 502(b)(2); *In re Bates*, 58 B.R. 915, 916 (Bankr.W.D.Tenn.1986) (citing numerous cases). This general prohibition on the recovery of post-petition interest is a codification of case law developed under the Bankruptcy Act. *See Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 167, 67 S.Ct. 237, 239–40, 91 L.Ed. 162 (1947).[3]

---

1. *In re Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

2. Bradford also candidly reminds the court in his motion for reconsideration that the parties had previously stipulated that the Note to Bradford had not been declared in default as of the date of filing of the petition. The court's order found to the contrary.

3. Three exceptions to this general prohibition were permitted under the case law developed under the Act. First, if the estate ultimately

■ Section 506(b) is one of the Bankruptcy Code's exceptions to Section 502(b)(2)'s proscription on the allowance of post-petition interest against the estate (the other is § 726(a)(5), discussed *infra*). The section permits the holder of a fully secured claim to receive an award of post-petition interest up to the value of its collateral. 11 U.S.C. § 506(b); *In re Hildreth*, 43 B.R. 721, 722 (Bankr.D.Idaho 1984).[4]

### A. *In re Ron Pair Enterprises, Inc.*

Section 506(b) has generated a good deal of litigation over its interpretation. Prior to the Supreme Court's 1989 decision in *In re Ron Pair Enterprises, Inc.*, courts were divided over whether the section authorized interest only to those oversecured creditors that had a prepetition consensual agreement calling for interest.[5] In *In re Ron Pair Enterprises, Inc.*, the Supreme Court settled the question, ruling that the recovery of postpetition interest under Section 506(b) is not limited to holders of consensu-al liens. *In re Ron Pair Enterprises, Inc.*, 109 S.Ct. at 1026. The Court reasoned that the phrase "interest on such claim" is set off by commas, while the reference to fees, costs, and charges follows the comma and the conjunctive words "and any". The interest award thus stands independent of the reference to "the agreement under which such claim arose." *Id.* at 1031. The Court thereby pried the Section 506(b) interest award free of any pre-existing agreement.

### B. *Cases decided under the Code regarding the appropriate rate of interest to be paid pursuant to Section 506(b) offer little guidance*

Left unanswered (because it was not an issue in the case) was whether, assuming there *is* an agreement underlying the claim, the court should look to that agreement to decide on the rate of interest to be allowed an oversecured creditor.[6] Giving

---

proved to be solvent, unsecured creditors could recover interest on their claims. Second, if a secured creditor's collateral was income-producing, the creditor was entitled to receive interest post-petition. Third, where the amount of the secured creditor's security was sufficient to satisfy both the principal and interest due on the secured claim, the creditor might be paid regular interest payments during the case. *See Securities Investor Protection Corp. v. Ambassador Church Finance Development Group*, 788 F.2d 1208, 1211 n. 4 (6th Cir.1986); *In re Boston & Maine Corp.*, 719 F.2d 493, 496 (1st Cir.1983).

**4.** 11 U.S.C. § 506(b) provides:
(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement under which such claim arose.
§ 506(b) governs only interest accruing between the date of the bankruptcy petition and the date of distribution to the creditor. Prior to filing, the interest rate on a claim is governed by applicable non-bankruptcy law (whether contractual or statutory) and simply represents part of the pre-petition claim.

**5.** The majority position was that postpetition interest could be recovered on all oversecured claims, whether consensual or nonconsensual. *See e.g., In re Young*, 61 B.R. 150 (Bankr.S.D. Ind.1986); *In re Henzler Mfg. Co.*, 55 B.R. 194 (Bankr.N.D.Ohio 1985); *In re Loveridge Mach. & Tool Co., Inc.*, 36 B.R. 159 (Bankr.D.Utah 1983); *In re Hoffman*, 28 B.R. 503 (Bankr.D.Md. 1983). Those courts generally relied on the fact that the phrase "interest on such claim" is separated by commas from the remaining reference to fees, costs and charges, indicating that the award of interest, unlike the recovery of attorneys fees and other charges, is not dependent on the existence of an "agreement". *See In re Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 1027, 103 L.Ed.2d 290 (1989) and authorities cited therein.

The minority position that § 506(b) limits recovery of postpetition interest to holders of consensual liens reads the phrase "provided for under the agreement under which such claim arose" to modify the words "interest on such claim" as well as the words "any reasonable fees, costs, or charges". *See, e.g., In re Newbury Cafe, Inc.*, 841 F.2d 20 (1st Cir.1988); *In re Nevada Environmental Landfill*, 81 B.R. 55 (Bankr.D.Nev.1987). These cases refused to impute significant congressional intent to the placement of a mere comma. *See In re Ron Pair Enterprises Inc.*, 109 S.Ct. at 1027. They also relied on pre-Code authority to the effect that the exception applied only to consensual liens. *See In re Newbury Cafe*, 841 F.2d at 22.

**6.** *Ron Pair* involved the award of interest on a tax claim which arose under a state statute. In the case of nonconsensual liens (usually tax liens), courts have usually used specified statutory rates of interest. See *e.g., Matter of Isley*, 104 B.R. 673 (Bankr.D.N.J.1989); *In re Davison*,

full effect to the Supreme Court's interpretation of that comma leads ineluctably to the conclusion that the entire issue of interest is completely divorced from either the existence or the content of any underlying agreement.

Case law prior to *Ron Pair* is of little assistance in resolving the issue, as most courts confronting the rate question for consensual lienholders had settled on the contract rate by relying (explicitly or implicitly) on the statute's reference to "that amount provided for under the agreement under which such claim arose." *See e.g., In re Bates,* 58 B.R. 915 (Bankr.W.D.Tenn. 1986); *In re Matter of Johnston,* 44 B.R. 667 (Bankr.W.D.Miss.1984); *In re Loveridge Machine & Tool Co., Inc.,* 36 B.R. 159 (Bankr.D.Utah 1983).[7] After *Ron Pair,* that logic is considerably less persuasive. Once the comma is given effect, leaping past it to the statute's reference to "the agreement" is no longer permissible.

Two courts allowed the use of non-contractual rates of interest even though there was a contract, relying ostensibly on "equitable principles." *In re Minguey,* 10 B.R. 806 (Bankr.W.D.Wisc.1981) (applying the rate of 10% on equitable principles); *In re Marx,* 11 B.R. 819 (Bankr.S.D.Ohio E.D. 1981) (legal rate). The precedential value of these decisions is somewhat flawed, however, as both cases were using Section 506(b) for guidance in setting the appropriate discount rate for paying a secured claim under a Chapter 13 plan. *See 3 Collier on Bankruptcy* ¶ 506.05 (15th ed. 1985).

Some courts employ circular logic, presuming the inviolability of the contract rate

to find that rate inviolable. *See, e.g., In re Gladdin,* 107 B.R. 803, 805 (Bankr.M.D.Ga. 1989) (finding the contract rate applicable because Section 506(b) does not expressly authorize a bankruptcy court to modify that rate); *In re Melbell Associates, Inc.,* 99 B.R. 31 (Bankr.E.D.Cal.1989); *See In re Loveridge Machine & Tool Co., Inc.,* 36 B.R. 159, 163 (Bankr.D.Utah 1983) (holding a contract rate appropriate because rejection of that rate would result in a windfall to the debtor or creditor depending on the rate selected). Because the very question to be resolved is to what the word "interest" refers, presuming a reference to the contract rate to conclude it refers to the contract rate is of course no assistance whatsoever.

### C. Case law construing Section 726(a)(5): A helpful analogy

The Code contains one other exception to the general prohibition on postpetition interest on claims. 11 U.S.C. § 726(a)(5).[8] A closer inspection of that section elucidates the issue at hand. Under Section 726(a)(5), if a Chapter 7 estate ultimately proves to be solvent, all holders of allowed unsecured claims are paid interest on their claims before any proceeds of the liquidation are returned to the debtor. The section directs payment of this interest "at the legal rate". 11 U.S.C. § 726(a)(5), (6). By inquiring after the meaning of this expression and the purpose for its use, we may be able to learn how best to interpret the award of interest in Section 506(b).

The Section 726 distribution is the contemplated last step in the overall liqui-

---

106 B.R. 1021 (Bankr.D.Neb.1989) (statutory rate); *In re Lapiana,* 100 B.R. 998 (N.D.Ill.1989) (rate specified in I.R.C. § 6621); *In re Krump,* 89 B.R. 821, 825 (Bankr.S.D.1988); *In re Henzler Mfg. Co.,* 55 B.R. 194, 197 (Bankr.E.D.Ohio 1985) (rate specified in I.R.C. § 6621); *In re Hoffman,* 28 B.R. 503, 508 (Bankr.Md.1983) (rate specified in I.R.C. § 6621).

**7.** The *Loveridge* court found that since § 506(b) treats interest on "an allowed secured claim" and such a claim may arise from contractual or noncontractual obligations, a claim arising from either type of lien is entitled to interest under the section. *Loveridge,* 36 B.R. at 162.

The court, applying equitable principles, added that using the specified contract rate avoids favoritism and prevents a windfall to either party. *Id.* at 163.

**8.** 11 U.S.C. § 726 provides in relevant part:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

.     .     .     .     .

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection.

dation process of a Chapter 7 case. By the time the trustee reaches this stage, she is expected to have first disposed of any property subject to third party interests (e.g., property subject to liens, property held in common with another), either by selling the property, returning it to third parties, or abandoning it to the debtor, and to have reduced all remaining interests in property to cash. 11 U.S.C. § 725. The Section 726 distribution process does not begin until all property has been converted to cash and all secured claims have been satisfied.

1. The award of post-petition interest is a matter within the discretion of the federal court, and arises under federal law

█ As a general proposition, "when and under what circumstances federal courts will allow interest on claims against debtors' estates ... has long been decided by federal law." *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1947). In *Vanston*, the Supreme Court stated that "[i]t is manifest that the touchstone of each decision on the allowance of interest in bankruptcy, receivership, and reorganization has been a balance of the equities between creditor and creditor or between creditors and the debtor." *Id.* 67 S.Ct. at 241.

As an adjunct to this principle, the Code expressly directs that, absent the affirmative intervention of the statute or the court, post-petition interest on all obligations of the debtor will not be allowed after the filing of the bankruptcy. 11 U.S.C. § 502(b)(2).

The federal bankruptcy rule, derived from English laws, provides that in the case of *insolvent* debtors interest, whether stipulated in a contract or not, stops at the moment the petition in bankruptcy is filed.

*Debentureholders Protective Committee v. Continental Investment Corp.*, 679 F.2d 264, 268 (1st Cir.1982), *cert. denied*, 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982), citing, *inter alia*, *Sexton v. Dreyfus*, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911). The First Circuit noted two reasons for this rule:

(1) Interest is a penalty or damages assessed for detention of money *by the debtor*, so it is not appropriate to assess that penalty against other creditors who are not to blame for the detention.

(2) It is the *court*, not the debtor, that is doing the "detaining" post-petition. *Id.* at 269.

We thus come upon the first of three important principles which should guide the decision of this matter: The justification for interest, if it is to be paid at all, is in compensation for the detention of money occasioned by the bankruptcy case itself, a detention visited equally on *all* creditors of the bankruptcy estate by a process operating under the exclusive auspices of the federal judicial system, and a detention not directly related to the prepetition agreements the debtor struck with its creditors. The obligation is the bankruptcy estate's, not the debtor's.

2. Compensation for delay before returning any surplus to the debtor

Section 726(a)(5) represents a statement of basic bankruptcy policy: in fairness, the debtor should not be permitted to enjoy this fund at the expense of the intended primary beneficiaries of the bankruptcy process, the debtor's creditors. Equity thus mandates that the debtor first pay his creditors for this delay cost out of this fund, before receiving the balance. H.Rep. 595, 95th Congress, 1st Session 352 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 240, 91 L.Ed. 162; *Debentureholders Protective Committee v. Continental Investment Corp.*, 679 F.2d 264, 269 (1st Cir.1982), *cert denied*, 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982); *see also In re Shaffer Furniture Co.*, 68 B.R. 827, 830 (Bankr.E.D.Pa.1987); *In re Beverly Hills Bancorp*, 752 F.2d 1334, 1339 (9th Cir.1984).

[T]he rule is in harmony with the settled English and American law that when an alleged bankrupt is proved solvent, the

creditors are entitled to receive post-petition interest before any surplus reverts to the debtor.

*Continental Investment Corp.*, 679 F.2d at 289; *See* 11 U.S.C. § 726(a)(6); *see also New York v. Saper*, 336 U.S. 328, 330 n. 7, 69 S.Ct. 554, 555 n. 7, 93 L.Ed. 710 (1949); *U.S. v. Bass*, 271 F.2d 129, 130 (9th Cir. 1959); *Littleton v. Kincaid*, 179 F.2d 848, 27 A.L.R.2d 572 (4th Cir.1950).[9] We thus learn the second important principle that speaks to the resolution of the question: If there is a surplus, creditors should be compensated for the delay occasioned by bankruptcy before any balance is returned to the debtor.

3. The underlying purpose of any bankruptcy system is the ratable, equitable distribution of assets among creditors of the estate

■  The general purpose of a bankruptcy statute is the equitable distribution of the debtor's assets among the debtor's creditors. 3 *Collier on Bankruptcy* ¶ 502.02[2] at 502–29 *et seq.* (15th ed. 1981). A number of significant consequences flow from this simple statement of the obvious. First, bankruptcy statutes should be interpreted to give effect to this underlying principle. Second, all similarly situated creditors should be similarly treated. Third, creditors should not be preferred absent special legal or equitable considerations warranting preferential treatment.

When this principle is applied to the interest question, one outcome is that similarly situated creditors equally affected by the circumstance which warrants the payment of interest (i.e., the delay caused by the bankruptcy) should be equally compensated on a pro rata basis. In other words, all such creditors should be paid at the same rate of interest, applied to their claims as allowed under Section 502. In this way, the interest compensation paid under Section 726(a)(5) is distributed on the same basis as the assets distributed in satisfaction of allowed claims under Section 726(a)(2)–(4). There is no good reason why

one unsecured creditor should receive a greater share of the Section 726(a)(5) "pie" solely by virtue of its *pre*petition contract interest rate when the rationale for paying interest under Section 726(a)(5) has nothing to do with the prepetition contracts of the debtor.

We thus learn from this analysis the third basic principle which should inform our decisionmaking on the issue at hand: Postpetition interest awards should be consistent with the principle of equitable, ratable distribution of estate assets to estate creditors.

4. Applying the three principles to the interpretation of Section 726(a)(5)— what is the "legal rate"

Section 726(a)(5) directs that interest be paid to unsecured creditors of a solvent estate at "the legal rate." The foregoing three principles give direction to what that rate refers.

We first can safely say that it does *not* refer to the respective contract rates of the various unsecured creditors, because that would fly in the face of equitable distribution of assets. Furthermore, the principle that postpetition interest is controlled by federal law militates against state-law contract rates. The principle that creditors should be paid in full before the debtor is entitled to any of the surplus supports the use of a contract rate, but the explicit language of the statute will not. The statute refers to *the* legal rate, applied equally to all unsecured creditors, indicating the use of a single rate ratably applied to all allowed claims. Finally, the interest contemplated under the creditor's contract is expressly *excluded* from allowance by Section 502(b)(2). Whatever is paid under Section 726(a)(5), it is certainly *not* the interest accruing under the prepetition contract. *But see* C. Fortgang & L. King, *The 1978 Bankruptcy Code: Some Wrong Policy*

---

**9.** The rationale for this payment is independent of claims allowance under § 502 (addressed by

§ 726(a)(2)–(4)).

*Decisions,* 56 N.Y.U.L.Rev. 1148, 1152 (1981).[10]

The state law judgment rate is used by some courts, without much analysis. *See, e.g., In re Shaffer Furniture Co.,* 68 B.R. 827, 830 (Bankr.E.D.Pa.1987); *In re Boyer,* 90 B.R. 200, 201 (Bankr.D.S.C.1988); *In re Adcom, Inc.,* 89 B.R. 2, 2 (D.Mass.1988). That rate faces some difficulties however. Again, the principle that the award of post-petition interest is a matter of federal law militates against using the judgment rate of a particular state, especially because the bankruptcy system is national in scope, affecting creditors with claims conceivably arising from multiple jurisdictions. Would the use of a New York judgment rate be appropriate in a New York bankruptcy where the creditor is in Texas and the contract contains a choice of law clause designating Texas law as controlling? Under what theory?

�as a fair rate for purposes of Section 726(a)(5). *See* 28 U.S.C. § 1961; *In re Goldblatt Bros.,* 61 B.R. 459, 466 (Bankr.N.D.Ill.1986); *In re A & L Properties,* 96 B.R. 287, 290 (C.D.Cal.1988). Its use would comport with two of the general principles discussed above, ratable distribution and use of federal law to decide a federal issue. In addition, the federal judgment rate matches the analytical posture of claims *vis-a-vis* the federal bankruptcy. Upon bankruptcy, all claims against the estate are "deemed allowed" as of the filing (in the absence of a timely objection). 11 U.S.C. § 502(a). From and after the petition date, creditor hold the equivalent of a federal judgment against estate assets, enforceable only in federal court. *See* 28 U.S.C. § 1334(a) (original and exclusive jurisdiction over bankruptcy), § 1334(d) (exclusive jurisdiction over property of the estate); 28 U.S.C. § 157(b)(2)(B) (claims adjudication a core proceeding); 11 U.S.C. § 524(a) (discharge bars further assertion of prepetition claims against the debtor); 11 U.S.C. § 362(a) (automatic stay of acts to collect claims against property of the estate); 11 U.S.C. § 726 (distribution of assets in satisfaction of claims); 11 U.S.C. § 1141 (confirmed plan binds all holders of claims against the debtor). Judgments entered in adversary proceedings, including judgments rendered on nondischargeable claims, earn interest at the federal judgment rate. *See In re Southern Indus. Banking Corp.,* 87 B.R. 518, 520 (Bankr.E.D.Tenn.1988); *see also In re Goldblatt Bros.,* 61 B.R. 459, 466 (Bankr.N.D.Ill. 1986). The rate is of course uniform nationally.

Only the principle of not paying the debtor any surplus before creditor claims are paid in full remains unvindicated by the use of this federal rate. That problem might be easily remedied on a case by case basis, however, by a reliance on "equitable principles" as suggested in *Shaffer Furniture. See In re Shaffer Furniture Co.,* 68 B.R. 827, 830 (Bankr.E.D.Pa.1987); *see also In re Beverly Hills Bancorp,* 752 F.2d 1334, 1339 (9th Cir.1984) (decided under the Bankruptcy Act). In the rare case in which interest paid at the federal judgment rate failed to exhaust the surplus available, a

---

**10.** Ordinarily, bankruptcy laws and rules affect the rights of creditors in favor of or at the expense of other creditors by changing the rules that would prevail outside a bankruptcy court in order to more equitably allocate the values of the debtor among the creditors. The alteration of a valid, binding, and legal contractual obligation, so that the debtor retains nonexempt property prior to the payment of its valid debts, is a legally startling and somewhat appalling result.... There does not appear to be any substantial policy consideration that would sanction this result. *Id.* Messrs. Fortgang and King would return to the arrangement used by some courts under the Act, "which routinely awarded postpetition interest at the contract rate in appropriate circum-stances." *Id.* at 1152 n. 18 (citations omitted). The approach may have much to recommend it in the narrow circumstance in which there is so much of a surplus that, after ratable distribution of interest at a court-set "legal rate," monies remain to compensate for interest which otherwise would have accrued under the terms of the contracts of the unsecured creditors. Unfortunately, as a *routine* approach, it also runs into a statutory roadblock—the prohibition on contract interest post-petition in Section 502(b)(2).

The premise of the law review article was that the Code as drafted is either premised on wrong policy decisions or generates unintended and unanticipated consequences. *Id.* at 1148. If the authors are correct, then it is up to Congress, not the courts, to remedy the problem.

second "cut" could be taken to pay any deficiency between that rate and the contract rate of particular unsecured creditors. Creditors whose contract rate was lower than the federal rate would not be affected. In this way, the third principle could be honored without doing violence to the other two.

### D. *Applying the principles learned to the Section 506(b) question*

■ The same guiding principles that led to the conclusion that "the legal rate" in Section 726(a)(5) should mean the federal judgment rate point to a similar conclusion for settling on the rate to be paid on the Section 506(b) award of "interest on such claim."

First, the same principle of compensation for delay imposed by the pendency of the bankruptcy case explains the basis for the provision of interest to secured creditors in this subsection. *Cf. In re Boston & Maine Corp.*, 719 F.2d 493, 496 (1st Cir.1983); *Matter of Walsh Construction, Inc.*, 669 F.2d 1325, 1330 (9th Cir.1982). We have already noted how the Supreme Court's decision in *Ron Pair* divorced the interest to be paid under the subsection from any underlying agreement by giving effect to the comma following the phrase "interest on such claim." The House Report adds that:

> Subsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable *fees, costs, or charges* provided under the agreement under which the claim arose. *These fees, costs, and charges* are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim.

H.Rep. No. 595, 95th Cong., 1st Sess. 356–57 (1977), U.S.Code Cong. & Admin.News 1978, p. 6312 (emphasis added). The "fees, costs and charges" discussed in the legislative history are on the *opposite* side of the

comma from the interest clause. *See* 11 U.S.C. § 506(b) ("interest on such claim, and any reasonable costs, fees, or charges provided for under the agreement").

Section 502(b)(2), meanwhile, affirmatively *prohibits* the recovery of *contract* interest post-petition as an allowed claim against estate assets. 11 U.S.C. § 502(b)(2). Section 506(b) should not be read to "give back" what Section 502(b)(2) "takes away." [11] The interest contemplated under Section 506(b) is most sensibly construed as an equitable award arising under federal law, to compensate the oversecured creditor for the delay caused by the bankruptcy case itself. *See Vanston*, 67 S.Ct. at 240 (1947).

The principle of equitable, ratable distribution of assets among creditors also lends support to the use of the federal rate in computing Section 506(b) interest awards. Any equity over and above the creditor's allowed secured claim belongs to the general pool of assets available to unsecured creditors. The competition for this asset is not between creditors and the debtor but between two different groups of creditors, secured and unsecured. The use of the federal judgment rate gives effect to Congress' intent that secured creditors have a "first claim" on that excess collateral value to compensate for the bankruptcy delay. At the same time, it prevents overreaching by the oversecured creditor. *See Johnson v. Norris*, 190 F. 459, 464 (5th Cir.1911) (payment of interest postbankruptcy should be based on equitable uniformity); *see also In re Leeds Homes, Inc.*, 222 F.Supp. 20, 33–34 (E.D.Tenn.1963) (contract interest should be disallowed when inequitable to other creditors). As the First Circuit noted in *Continental Investment Corporation*, the secured creditor's contractual interest rate arose from a deal struck with the debtor, not the unsecured creditors. *Debentureholders Protective Comm. v. Continental Investment Corp.*,

---

**11.** A fundamental tenet of statutory construction is that "each part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be con-

strued." 2A N. Singer, *Sutherland Statutory Construction* § 46.05, at 90 (Rev. 4th ed. 1984 & Supp.1985); *see also United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952).

679 F.2d at 268–69. Because the rationale for paying postpetition interest is to compensate for the delay imposed by the bankruptcy process (which delay is visited equally on all creditors), there is little justification for making *unsecured creditors* pay the secured creditor a rate of interest derived from a prepetition agreement to which they were not party. Use of the federal rate yields an "equitable solution" to the competing claims of the secured and unsecured creditor that also honors the principle of applying federal law to the payment of postpetition interest. *See Vanston,* 67 S.Ct. at 240.

The court recognizes that one alternative analysis might be offered to support an award of contract interest to the oversecured creditor, on the theory that the equity in the collateral outside of bankruptcy would be vulnerable to that rate of interest. This analysis would make note that unsecured creditors trying to enforce a state law judgment against the equity in the collateral outside bankruptcy would take subject to that contract interest claim. The result, would go the logic, should be no different in bankruptcy.

This argument does not account for the operation of Section 502, however. *All* creditors, including oversecured creditors, are deemed to have an allowed claim as of the bankruptcy filing which is the functional equivalent of a *federal judgment* against the estate's assets (absent a timely objection). 11 U.S.C. § 502(a); 3 *Collier on Bankruptcy* ¶ 502.01[1] (15th ed. 1987); *see Lewith v. Irving Trust Co.,* 67 F.2d 855 (2d Cir.1933) (allowance of claim has effect of judgment in bankruptcy proceeding); *In re McChesney,* 58 F.2d 340 (9th Cir.1931) (same); *International Agric. Corp. v. Cary,* 240 Fed. 101 (6th Cir.1917) (allowance of claim amounts to adjudication to that effect). The oversecured creditor's "federal judgment" would accrue interest at the federal judgment rate. *See* 28 U.S.C. § 1961. Meanwhile, contract interest accruing postpetition is *disallowed* as a claim against the estate by Section 502(b)(2). State law entitlements are as a general principle suspended in the interests of an equitable distribution of assets in accordance with the Bankruptcy Code's scheme of entitlements. *See* 3 *Collier on Bankruptcy,* ¶ 502.2 at 502–31 (15th ed. 1985). That is not a result that shocks the conscience of this court. To the contrary, it is entirely consistent with the Code's function of superimposing a federal entitlement scheme which pre-empts state law in service to the federal enactment's goal of promulgating a *uniform* system of laws respecting bankruptcy.

## CONCLUSION

For the foregoing reasons, it is the conclusion of this court that, when computing the interest to be award to an oversecured creditor under Section 506(b), a court should apply the federal judgment rate applicable to the period during which postpetition interest has accrued. Neither the prepetition contract rate nor the prepetition default rate provided under the contract should control the interest rate to be paid under Section 506(b). Again, there may be extraordinary circumstances which would dictate the payment of some additional amount perhaps approaching the contract rate. *See In re Shaffer Furniture Co., supra.* Those circumstances are not present here, however.

For the reasons which led this court to settle on the federal judgment rate, the court also concludes that, in equity, interest on interest should not, as a general rule, be permitted under Section 506(b). As the Supreme Court opined in *Vanston,* such an award is "not in accord with principles of equitable distribution in bankruptcy." *Vanston,* 67 S.Ct. at 240. The facts of this case do not present any exceptional circumstances which would warrant deviation from this rule.

Because we have found that resort to the prepetition contract rate of interest is inappropriate, we do not reach the question whether a contractual default rate would ever be an appropriate interest award under Section 506(b). The clear indication is that only the most unusual circumstances would ever justify its use.

■ The court also notes that the payment of interest under Section 506(b) has antecedents entirely independent from the payment of "adequate protection" to the secured creditor pursuant to Sections 362(d)(1) or 363(e). *See University Savings Assoc. of Houston, Texas v. Timbers of Inwood Forest, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 631–32, 98 L.Ed.2d 740 (1987). The oversecured creditor receives interest because, like the unsecured creditor of a solvent estate, it enjoys the good fortune of having more than enough property with which to satisfy its claims. It will of necessity not be entitled to "adequate protection" because its allowed secured claim has never been imperiled by the deterioration in value of its collateral.[12] In this case, the creditor's allowed secured claim has never been in danger. To the extent it has received payments denominated as "adequate protection," those payments will be treated as Section 506(b) interest payments. The estate will be liable for any shortfall. The creditor must repay any windfall.

The Chapter 11 Trustee is directed to prepare a form of order in conformity with this decision, in which the applicable federal judgment rate applied to the allowed secured claim of Bradford is computed.

---

12. It is conceivable that an oversecured creditor might request adequate protection to assure the preservation of an equity cushion sufficient to cover its claim to Section 506(b) interest.